BLAKEMORE, APPELLEE, *v.* BLAKEMORE, APPELLANT.

[Cite as Blakemore *v.* Blakemore (1983), 5 Ohio St. 3d 217.]

(No. 81-1935—Decided July 6, 1983.)

*Messrs. Calhoun, Waddell, Ufholz & Hunt* and *Mr. Howard L. Calhoun,* for appellee.

*Blakemore, Rosen & Norris Co., L.P.A., Mr. Bernard I. Rosen* and *Mr. James F. Burke, Jr.,* for appellant.

Sweeney, J. The leading case with respect to termination of sustenance alimony in Ohio, *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474], stated at page 414:

"Any grant of 'alimony' for sustenance is necessarily co-extensive with the court's determination that it is needed and warranted. Such authentication and supervision is accomplished through the continuing jurisdiction of the court."

Then, in *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348 [20 O.O.3d 318], this court stated at page 355:

"* * * A trial court must have discretion to do what is equitable upon the facts and circumstances of each case.

"Of course, a trial court's discretion, though broad, is not unlimited. A reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did. Section 3 (B), Article IV of the Ohio Constitution; App. R. 12."

The issue before us in this cause is whether the court of appeals was correct in reinstating the sustenance alimony payments terminated by the trial court. Stated differently, we must determine whether the trial court abused its discretion in terminating alimony payments to the appellee in the modification decision of March 20, 1981.

A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property, *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318 [23 O.O.3d 296]; and when appropriate, in awarding alimony based on need. *Wolfe* v. *Wolfe, supra.*

In the instant case, the court of appeals did not apply the proper standard of review in reversing the trial court's termination of sustenance alimony payments. The trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion. *Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 355, at 357 [23 O.O.3d 320]; *Cherry* v. *Cherry, supra,*

at 355; *Berish, supra,* at 319. See, also, *Dennison* v. *Dennison* (1956), 165 Ohio St. 146, 150 [59 O.O. 210].

The term "abuse of discretion" was defined by this court in *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O.3d 169]:

"The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148]; *Conner* v. *Conner* (1959), 170 Ohio St. 85 [9 O.O.2d 480]; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372 [2 O.O.2d 484]."

Although *Adams* dealt with "abuse of discretion" in a criminal law context, our citation of *Conner* implies that the term has the same meaning when applied in a domestic relations context.

The appellate court in the instant case was incorrect in substituting its judgment for that of the trial court. Given the evidence in the record that was carefully reviewed by the trial judge, we cannot find that the decision to terminate sustenance alimony to appellee was either unreasonable, arbitrary or unconscionable.

The trial judge in the case *sub judice* found sufficient changed circumstances which he believed justified a termination of sustenance alimony payments, when he made his specific findings of fact and conclusions of law. In particular, with reference to the factors enumerated in R.C. 3105.18,[1] the trial judge found that appellee had acquired employment at an annual salary of approximately $11,500 per year with fringe benefits such as medical insurance and a pension plan; that she had sold the marital home and obtained a profit which enabled her to purchase a new home free of mortgages or en-

---

[1] R.C. 3105.18 provides:

"(A) In a divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony as it deems reasonable to either party.

"The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker.

"(C) In an action brought solely for an order for alimony under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party."

cumbrances; that she was able to loan a friend $2,100; that she had at the time of the hearing, $47,000 in various bank accounts; and that she was netting a little in excess of $7,000 per year on rents from a parking lot that she received in the original property settlement.

Taking into account all of these factors, the trial judge held that "[appellee's] income exclusive of the alimony payments exceeds her needs by her own testimony." These changed circumstances stand in stark contrast to the situation the appellee confronted at the time of the divorce, when she was suffering from mental and emotional difficulties, was unemployed and was in need of alimony payments to at least meet her expenses.

In *Wolfe,* this court declined to set up a rule whereby post-divorce unchastity, standing alone, would be sufficient grounds to terminate sustenance alimony. By the same token, by holding that the trial judge did not abuse his discretion in terminating the sustenance alimony payments, we are not suggesting that the acquisition of gainful employment automatically eliminates the need for sustenance alimony. However, it is a factor which could and should be considered in a modification or termination proceeding. As we noted in *Cherry, supra,* at 355:

"* * * it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce."

Similarly, we find it ill-advised to set down a *per se* rule concerning spousal employment with respect to an alimony modification proceeding. In addition, our decision today should not be interpreted as a foreclosure to appellee for any possible reinstatement of alimony in the future. Under the continuing jurisdiction of the trial court, the appellee can move to reinstate the alimony upon proper pleading and proof of need therein. *Wolfe, supra.*

Taking into account the totality of circumstances as contained in the record, along with the findings of fact and conclusions of law set forth by the trial judge, we hold that the trial judge did not abuse his discretion in terminating the alimony payments in the modification proceeding below.[2]

Therefore the judgment of the court of appeals is reversed.

*Judgment reversed.*

---

[2] Although our decision here nullifies the effect of the appellate court's imposition of a fifteen percent interest rate on alimony arrearages, we must note that such an interest rate is clearly contrary to law.

R.C. 1343.03 provides in pertinent part:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon * * * all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of a contract, or other transaction, the creditor is entitled to interest at the rate of eight per cent per annum, and no more."

Given this explicit language, the court of appeals erred as a matter of law in setting an interest rate above the statutory allowance.

CELEBREZZE, C.J., PATTON, LOCHER, HOLMES, C. BROWN and KOEHLER, JJ., concur.

PATTON, J., of the Eighth Appellate District, sitting for W. BROWN, J.

KOEHLER, J., of the Twelfth Appellate District, sitting by assignment.