[Cite as *Hume v. Hume*, 2014-Ohio-1577.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


SANDRA HUME, nka PRESUTTI : JUDGES:
:
: Hon. William B. Hoffman, P.J.
Plaintiff - Appellee : Hon. Sheila G. Farmer, J.
: Hon. Craig R. Baldwin, J.
:
-vs- :
:
ANDREW C. HUME AND BRADLEY :
J. HUME, CO-EXECUTORS OF THE :
ESTATE OF THOMAS DIXON HUME :
: Case No. 13CA26
:
Defendants - Appellants :
: O P I N I O N


CHARACTER OF PROCEEDING: Appeal from the Knox County Court
of Common Pleas, Case No.
09DV06-0151


JUDGMENT: Affirmed


DATE OF JUDGMENT: April 11, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendants-Appellants

RALPH S. SILVESTRI, JR.                   JAMES R. COOPER
130 East Chestnut Street, Suite 402       Morrow, Gordon & Byrd, LTD.
Columbus, OH 43215                        33 W. Main Street
                                          P.O. Box 4190
                                          Newark, OH 43058-4190

*Baldwin, J.*

{¶1} Defendants-appellants Andrew C. Hume and Bradley J. Hume, Co-Executors of the Estate of Thomas Dixon Hume, appeal from the July 30, 2013 Judgment Entry of the Knox County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

{¶2} Thomas Dixon Hume (hereinafter "Thomas Hume") and appellee Sandra Hume, nka Presutti were married on October 12, 1985. No children were born as issue of such marriage.

{¶3} On June 29, 2009, appellee filed a complaint for divorce against Thomas Hume. An Agreed Judgment Entry and Decree of Divorce was filed on September 29, 2010. The Decree required that the parties' marital real estate be listed for sale for $229,000.00 and that the parties sign a listing agreement with a specified realtor. Pending sale, Thomas Hume was granted exclusive occupancy and was required to pay the mortgage, taxes, and insurance. The Decree further stated, in relevant part, as follows: "If Defendant opts to purchase the real estate, he shall have fifteen (15) days from June 17, 2010 to do so and shall refinance the mortgage or otherwise remove Plaintiff's name and liability. Defendant shall further be responsible for the mortgage, taxes and insurance associated with said property and hold Plaintiff harmless thereon. Further, Defendant shall pay Plaintiff $80,000.00 at closing. All of the above must take place within the 15 day time period." The Decree also required Thomas Hume to follow all recommendations of the realtor. The trial court retained jurisdiction over the sale and disposition of the real estate.

{¶4}     Under "Retirement /Pension", the Decree stated on page 5 that if Thomas Hume purchased the marital property himself, "each party shall be and is hereby awarded his/her own Pension with the exception that plaintiff shall be and is hereby awarded $80,000.00 from Defendant."

{¶5}     On December 22, 2010, appellee filed a contempt motion against Thomas Hume. Appellee, in her motion, alleged that Thomas Hume had ignored the trial court's orders relating to the sale of the marital residence by, on a number of occasions, intentionally stopping the showing of the same to potential buyers and also that Thomas Hume had deliberately put refinancing on hold and refused to make necessary repairs and clean up the property. Appellee sought an award of reasonable attorney's fees for Thomas Hume's contemptuous conduct.   Thomas Hume, in a February 11, 2011 memorandum in opposition, disputed that he intentionally stopped showing the residence to prospective buyers and stated that he was able to secure a reverse mortgage. He further noted that, in a December 17, 2010 letter to appellee's counsel, he had offered to purchase appellee's half interest in the marital property for $40,000.00, but that appellee had refused such offer.

{¶6}     A hearing before a Magistrate was held on April 6, 2011. The Magistrate, in a Proposed Decision filed on April 13, 2011, recommended that Thomas Hume be found in contempt for failing to "follow additional recommendations of the realtor, specifically not being present when the property was being shown."   The Magistrate further recommended that Thomas Hume be order to pay appellee $500.00 as and for attorney's fees. After Thomas Hume filed objections to the Magistrate's Proposed Decision, the trial court, on October 3, 2011, overruled Thomas Hume's objections and

found Thomas Hume in contempt. The trial court ordered that, in order to purge his contempt, Thomas Hume pay appellee $500.00 within 30 days as and for attorney's fees. The trial court also ordered the parties to list the residence with a realtor of their choice, but that if they could not agree, ordered them to list the residence with Sam Miller at a price not to exceed $229,000.00. The court ordered the parties to consider the realtor's recommendations in establishing a sales price for the residence and further ordered them to accept any reasonable offer within 5% of the listing price.

{¶7} Appellee, on November 2, 2011, filed a motion seeking an award of reasonable attorney's fees, costs, court costs and other reasonable expenses as a result of frivolous conduct committed by Thomas Hume. Appellee relied on R/C. 2323.51, et seq. and R.C. Section 3105.73 in her motion. She filed an amended motion on November 23, 2011.

{¶8} Thomas Hume, on January 27, 2012, filed a motion requesting that the trial court issue appropriate orders concerning the listing of the subject real estate. Thomas Hume, in his motion, alleged that he had complied with the trial court's order by signing a listing agreement in accordance with Sam Miller's recommendation as to price, that he had secured a reverse mortgage in order to purchase appellee's interest on two occasions, and that appellee had still not signed the listing agreement. He further indicated that appellee had rejected his offer to purchase her interest in the property.

{¶9} Thereafter, on June 8, 2012, appellee filed a Motion to Clarify and/or Interpret the language of the Divorce Decree. In her motion, she argued, in part, that Thomas Hume "essentially, by his actions, effectively purchased the marital real estate,

and that he therefore owes Plaintiff $80,000.00 as provided for in the Decree." She noted that Thomas Hume claimed that since he did not purchase the real estate within the time frame set forth in the Decree, he did not owe appellee $80,000.00. Appellee, in her motion, requested as follows:

{¶10} "For these reasons, and reasons to be presented at hearing, Plaintiff respectfully requests that the Court issue an Order clarifying and/or interpreting the relevant portions of the divorce decree at issue and specifically, that the Court interpret and determine that Plaintiff is entitled to receive no less than $80,000.00 from Defendant, at closing on Defendant's refinance of his purchase of the former marital residence, and that Plaintiff be entitled to retain, free and clear of any and all claim of title therein by Defendant, all monies in her pension, retirement and other such deferred assets. To permit Defendant to proceed otherwise not only defeats the provisions of the Decree but it awards Defendant for being in contempt of court by allowing the Court's order issued after the contempt hearing to lessen the value Plaintiff is to receive from sale of the marital residence as was set forth in the Decree."

{¶11} In response, Thomas Hume, on June 12, 2012, filed a memorandum in opposition to appellee's motion. As memorialized in an Agreed Journal Entry filed on June 18, 2012, appellee was ordered to sign the purchase and sale agreement prepared by Sam Miller and Thomas Hume was ordered to proceed with his reverse mortgage financing. The court ordered that the pending motions before it would be reset for hearing after the closing on the reverse mortgage. The closing occurred in January of 2013 and the net proceeds were deposited into the trust accounts of counsel.

{¶12} A final hearing on pending motions was scheduled for April 22, 2013. Pursuant to a Magistrate's Order filed on May 3, 2013, an oral hearing was scheduled for May 20, 2013. However, due to Thomas Hume's admission to a nursing home, no oral hearing was held and the matter was determined on briefs and affidavits filed with the court.

{¶13} The Magistrate, in a Proposed Decision filed on May 29, 2013, recommended that appellee was entitled to $80,000.00 whether or not the net proceeds of the house equaled this amount even though Thomas Hume did not purchase the property within the 15 day period set forth in the Decree. The Magistrate further recommended, in part, that Thomas Hume's actions during the matter warranted an award of attorney's fees to wife pursuant to R.C. 3105.73 in the amount of $2,000.00. Thomas Hume filed objections to the Magistrate's Decision.

{¶14} Pursuant to a Judgment Entry filed on July 30, 2013, the trial court rejected Thomas Hume's argument that his failure to purchase the marital residence within 15 days made irrelevant the language of the Decree entitling appellee to $80,000.00 in proceeds from the sale of the residence. The trial court stated that "[t]he 15 day provision was clearly intended to accelerate the sale process and disentangle the parties" and further noted that the paragraph entitled RETIREMENT/PENSION "reiterates that if husband purchased the property he paid wife $80,000 and each party kept their pensions." The trial court found that appellee was entitled to a judgment against Thomas Hume for the difference between the reverse mortgage proceeds ($73,406.82) and the $80,000.00, or $6,593.18. The trial court also awarded appellee attorney fees in the amount of $2,000.00 pursuant to R.C. 3105.73 and gave Thomas

Hume one year from the date of the final order within which to pay the same.  The trial court noted that during the post-decree litigation, Thomas Hume maintained that he did not want to sell the house and that he was found in contempt during the time the house was first listed for sale. The court also noted that Thomas Hume's own brother, in his affidavit, indicated that as late as April of 2012, Thomas Hume did not want to give appellee a dime.

{¶15}   Appellants[1] now appeals from the trial court's July 30, 2013 Judgment Entry, raising the following assignment of error on appeal:

{¶16}   THE TRIAL COURT COMMITTED ERROR IN ITS INTERPRETATION OF THE JUDGMENT DECREE OF DIVORCE, BY ITS FINDING AND JUDGMENT THAT APPELLANT WAS REQUIRED TO PAY THE APPELLEE EIGHTY THOUSAND AND 00/100 DOLLARS ($80,000.00) AT THE CLOSING OF THE SALE ON THE REAL ESTATE, AND IN ITS AWARD OF JUDGMENT IN FAVOR OF APPELLEE AND AGAINST APPELLANT IN THE AMOUNT OF SIX THOUSAND FIVE HUNDRED NINETY-THREE AND 18/100 DOLLARS ($6,593.18) WITH INTEREST.

{¶17}    THE TRIAL COURT COMMITTED ERROR IN AWARDING APPELLEE ATTORNEY FEES IN THE AMOUNT OF TWO THOUSAND AND 00/100 DOLLARS ($2,000.00) UNDER SECTION 3105.73 OF THE OHIO REVISED CODE.

I

{¶18}   Appellants, in their first assignment of error, argue that the trial court erred in interpreting the Divorce Decree as requiring Thomas Hume to pay appellee $80,000.00. We disagree.

---

[1] Thomas Hume died on February 14, 2014 and Andrew C. Hume and Bradley J. Hume, Co-Executors of his Estate, have been substituted as parties.

{¶19}   At issue in the case sub judice is  the meaning of the following language contained in the Decree: "If Defendant opts to purchase the real estate, he shall have fifteen (15) days from June 17, 2010 to do so and shall refinance the mortgage or otherwise remove Plaintiff's name and liability …Further, Defendant shall pay Plaintiff $80,000.00 at closing. All of the above must take place within the 15 day time period." Appellant argues that since he did not purchase the property within fifteen (15) days, he does not have to pay appellee $80,000.00. Appellee disagrees.

{¶20}   We note that the trial court has the inherent power to interpret and enforce its own orders. *Steineck v. Steineck,* 5th Dist. Tusc. No. 92AP110080, 1993 WL 221343 (June 3, 1993). Such interpretations are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶21}   The trial court, in its July 30, 2013 Judgment Entry, held that "[w]hether husband complied with the 15 day provision or not, he still purchased the property. The 15 day provision was clearly intended to accelerate the sale process and disentangle the parties." We find that the trial court did not abuse its discretion in so interpreting the above language in the Decree because the trial court's decision was not arbitrary, unconscionable or unreasonable. As noted by the trial court, the provision of the Decree entitled "RETIREMENT/PENSION"  clearly and unambiguously provides that if appellant purchased the property, "each party shall be and is hereby awarded his/her own Pension with the exception the plaintiff shall be and is hereby awarded $80,000.00 from

Defendant…" On such basis, we find that the trial court did not err in ruling as it did in interpreting the subject fifteen day provision. The clear intent was that appellee would receive $80,000.00 if Thomas Hume purchased the marital property. Thomas Hume did so.

{¶22} Appellants' first assignment of error is, therefore, overruled.

II

{¶23} Appellants, in their second assignment of error, argue that the trial court erred in awarding appellee $2,000.00 in attorney fees under R.C. 3105.73. We disagree.

{¶24} An award of attorney's fees lies within the sound discretion of the trial court. *Rand v. Rand*, 18 Ohio St.3d 356, 481 N.E.2d 609 (1985). A court's decision on a request for attorney fees will not be reversed absent an attitude that is unreasonable, arbitrary, or unconscionable. *Dunbar v. Dunbar*, 68 Ohio St.3d 369, 371, 1994-Ohio-509, 627 N.E.2d 532.

{¶25} R.C. 3105.73(B) states as follows:

{¶26} "In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

{¶27} We find that the trial court did not err in awarding appellee $2,000.00 in attorney fees because the trial court's decision was not arbitrary, unconscionable or unreasonable. As is stated above, Thomas Hume was found in contempt for failing to follow the recommendations of the first realtor. At the contempt hearing, Thomas Hume testified that he did not want to sell the house that he built.

{¶28} In addition, Robert Hume, Thomas Hume's brother, in an affidavit attached to a rebuttal brief filed by appellee on May 6, 2013, stated, in relevant part, as follows:

{¶29} "Tom [appellant] has made a number of comments to me about his intentions regarding ongoing litigation in his divorce from Sandy [appellee]. In the past year or so, and certainly after the date their divorce was finalized, that is, after the summer of 2010, and even after the date he was found to be in contempt of court in April 2012, Tom has told me directly that he will not pay to Sandy any money that their divorce decree requires him to pay, even though the decree requires it. Tom has also stated that he will not sell their former marital residence. Specifically, for example, Tom told me in one of our phone conversations that he "…would be taken from (the former marital residence) with (his) toes pointed up before (he)'ll pay her (Sandy) anything' Also, prior to the divorce in June of 2010 and up to our last conversation in April of 2013, on multiple occasions, Tom has said of Sandy, 'I don't want to give her a dime.'

{¶30} "Based on those and other general comments Tom has made to me since 2010, and including recently, Tom has made it very clear to me that he has no intention of following the court's orders in the decree of divorce that require him to give Sandy any monies that he acknowledges the decree states he is supposed to pay her. I also

have interpreted his comments and demeanor in making those comments that he never intended to sell their house as the divorce decree required and that he would 'die in it.' He stated that he knew that the divorce decree required that he sell it, though. Yet, Tom has also stated that it has always been his plan to keep the marital residence for himself and he would utilize a reverse mortgage if he were made to pay any monies to Sandy".

{¶31} As noted by the Magistrate in her May 29, 2013 Proposed Decision, "[i]t does appear that husband engaged in conduct that prevented the reverse mortgage process from being completed that would have allowed the sale of the property to be completed in a timely fashion."

{¶32} Based on the foregoing, appellants' second assignment of error is overruled.

{¶33} Accordingly, the judgment of the Knox County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Farmer, J. concur.